United States Courts
Southern District of Texas
FILED

*September 13, 2023*

Nathan Ochsner, Clerk of Court

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| SANTOS DIAZ; | § | |
|             Plaintiff | § | |
| VS. | § | |
| | § | |
| THIRD COAST EMPLOYEE SERVICES, | § | |
| LLC; | § | |
| | § | |
| DAVID COOPER INDIVIDUALLY | § | Civil Action No. 4:22-cv-04379 |
| AND AS AGENT, REPRESENTATIVE, | § | |
| SERVANT, EMPLOYEE AND/OR | § | |
| OFFICER OF THIRD COAST | § | |
| EMPLOYEE SERVICES, LLC; | § | |
| | § | |
| GULF ISLAND WORKS, LLC; | § | |
| | § | |
| ANADARKO US OFFSHORE, LLC; | § | |
| | § | |
| ANADARKO PETROLEUM | § | |
| CORPORATION; | § | |
| | § | |
| THIRD COAST EMERALD, LLC; | § | |
| | § | |
| And | § | |
| | § | |
| DESTIN PIPELINE COMPANY, L.L.C. | § | |
|             Defendants | § | |

## PLAINTIFF'S FOURTH AMENDED COMPLAINT
## (SUBJECT TO PLAINTIFF'S MOTION TO REMAND)

**TO THE HONORABLE JUDGE OF SAID COURT:**

NOW COME **SANTOS DIAZ** (Texas DL #xxxxx523) (SS#xxx-xx-x614) (sometimes hereinafter referred to as Plaintiff), complaining of **THIRD COAST EMPLOYEE SERVICES, LLC** (sometimes hereinafter referred to as Defendant **THIRD COAST**); **DAVID COOPER,**

**INDIVIDUALLY AND AS AGENT, REPRESENTATIVE, SERVANT, EMPLOYEE AND/OR OFFICER OF THIRD COAST EMPLOYEE SERVICES, LLC** (sometimes hereinafter referred to as Defendant **COOPER**); **GULF ISLAND WORKS, LLC** (sometimes hereinafter referred to as Defendant **GULF ISLAND**); **ANADARKO US OFFSHORE, LLC** and **ANADARKO PETROLEUM CORPORATION** (sometimes hereinafter referred to as **ANADARKO** Defendants); **THIRD COAST EMERALD, LLC** (sometimes hereinafter referred to as Defendant **THIRD COAST EMERALD**); and, **DESTIN PIPELINE COMPANY, L.L.C.** (sometimes hereinafter referred to as Defendant **DESTIN**), and for cause of action shows the following:

1.     Plaintiff is amending his live pleading since Defendant **THIRD COAST** recently submitted discovery responses and identified new correct defendants. Plaintiff is amending to bring in newly identified Defendants **THIRD COAST EMERALD** and **DESTIN PIPELINE COMPANY, L.L.C.**

## I.    PARTIES AND SERVICE

2.   Plaintiff brings this suit individually.

3.     Defendant, **THIRD COAST EMPLOYEE SERVICES, LLC** is a corporation licensed to and doing business in the State of Texas have appeared herein by and through their attorney of record, Michelle E. Gray, FOGLER, BRAR, O'NEIL & GRAY, LLP.

4.     Defendant, **DAVID COOPER** is an individual who has been served with citation and has answered and appeared by and through his attorney of record, Michelle E. Gray, FOGLER, BRAR, O'NEIL & GRAY, LLP.

5.      Defendant, **GULF ISLAND WORKS, LLC** is a corporation licensed to and doing business in the State of Texas which has been served and has answered and appeared by and through its attorney of record, William S. Bordelon.

6.      Defendant, **ANADARKO US OFFSHORE, LLC** is a corporation licensed to and doing business in the State of Texas which has been served and has answered and appeared by and through its attorney of record, Sarah C. Jones, SCHOUEST, BAMBAS, SOSHEA, BENMAIR & EASTHAM, PLLC.

7.      Defendant, **ANADARKO PETROLEUM CORPORATION** is a corporation licensed to and doing business in the State of Texas which has been served and has answered and appeared by and through its attorney of record, Sarah C. Jones, SCHOUEST, BAMBAS, SOSHEA, BENMAIR & EASTHAM, PLLC.

8.      Defendant **THIRD COAST EMERALD, LLC** is a corporation licensed to and doing business in the State of Texas which can be served by serving its president **MATTHEW W. ROWLAND, at 1501 McKinney St., Houston, Texas 77010-4010. (<u>CITATION IS HEREBY REQUESTED</u>).**

9.      Defendant **DESTIN PIPELINE COMPANY, L.L.C.** is a corporation licensed to and doing business in the State of Texas which can be served by serving its registered agent for service **CORPORATION SERVICE COMPANY D/B/A C, 800 Brazos, Austin, Texas 78701. (<u>CITATION IS HEREBY REQUESTED</u>).**

10. All parties are Texas citizens.

## II.    VENUE

11.    Venue is proper in Harris County, Texas pursuant to Section 15.002(a)(3) of the Texas Civil Practice and Remedies Code because it is the place of headquarters and corporate residence of all Defendants.

## III.    FACTS/CAUSES OF ACTION/NEGLIGENCE

12.    On or about June 24, 2022, Plaintiff was in the course and scope of his employment with Defendant **GULF ISLAND** and was on a platform owned and under the control of **ANADARKO** Defendants and/or Defendant **THIRD COAST EMERALD** and/or Defendant **DESTIN**.  He was replacing a valve/gasket, only after Defendants **THIRD COAST, THIRD COAST EMERALD** and **DESTIN** and **ANADARKO** Defendants, by and through its employees and supervisors had assured Plaintiff that the line had been cleared of natural gas.  Defendant **COOPER** was acting within the scope of authority when he negligently said the line was clear to Plaintiff and not following his employer's dictates: to only operate within corporate required safety rules and lockout/tagout such lines by permitting workers such as Plaintiff to open them. Defendant **COOPER** told Plaintiff he could do so when in fact Defendant **COOPER** had not acted within the dictates of his course and scope of employment.  Alternatively and in the course and scope, both **COOPER** and his employer were negligent for his actions and omissions.  Defendant **COOPER** was at all times the person in charge, in his course and scope  of employment for Defendant **THIRD COAST**.

13.    Defendant **DESTIN** was negligent in not having sensor, valve, or gauge near  point at attempt to replace an in line "skillet" so foreseeable worker attempting to do so, Plaintiff **DIAZ**, would be able to insure the pipe was clear and safe.  Defendant **DESTIN**, although walkie-talkie communication was available.

14.     The accident occurred due to the lack of supervision and the oversight by **ANADARKO** and/or **THIRD COAST EMERALD/DESTIN** Defendants, who owned/operated the rig, and were and are responsible for safety, and for the procedures used by its hired subs such as Defendant **THIRD COAST**, and its supervisors, employees, including but not limited to Defendant **COOPER**.  Each and all were negligent and proximately caused the accident and Plaintiff's injuries and damages.

15.     Defendant **COOPER** and his employer, **THIRD COAST** were negligent in that they knew or should have know that Plaintiff **DIAZ** was going to necessarily open the pipe in question, and let him proceed anyway, and by not advising correctly to Plaintiff **DIAZ** that the pipe was no clear, nor safe.  All defendants knew the pipe in question was used to flow natural gas.  A pocket of gas ignited due to no negligence of Plaintiff **DIAZ** and blasted him at extreme close range, necessitating him to be halo flighted to land/shore for emergency room treatment.

16.     Although Plaintiff was properly tied off, the explosion shot him out and back repeatedly into the derrick, causing him burns, contusions, and severe and permanent injuries, including a traumatic brain injury which affects his balance, memory, concentration, and decision making and organizational skills, to this day and permanently.  (See attached Exhibit 1 – Affidavit of Santos Diaz, and Exhibits 2 and 3 – Dr. Pollock's Neuropsychological Evaluation Report and Brain Injury Function Evaluation).

17.     Plaintiff **DIAZ** was recruited in Texas.  Plaintiff **DIAZ** was told to return back to work or lose his job by Defendant **GULF ISLAND**, and he attempted to go back to work, but due to his severe injuries he struggled doing his job, and was therefore fired by Defendant **GULF ISLAND**.  All of which is in violation of Section 451 of the Texas Labor Code and the Work Comp Act, which applies to Plaintiff, since he was recruited in Texas, was injured on the job for

which Texas work comp was in effect and available, and for exercising his rights for the protections so provided, Plaintiff was fired.

18.     Plaintiff's injuries and damages were proximately caused by Defendants' negligent, careless, and reckless disregard of said duty.

19.     Each of the above and foregoing acts and/or omissions of Defendants, taken singularly or in combination, constitutes negligence and/or negligence per se which proximately caused Plaintiff's injuries and damages alleged herein.

## IV.    DAMAGES

17.     As a direct and proximate result of the accident made the basis of this lawsuit, Plaintiff suffered severe injuries.  Additionally, he has incurred the following damages.

(a)     Reasonable medical care and expenses in the past.  These expenses were incurred by Plaintiff, for the necessary care and treatment of the injuries resulting from the accident complained of herein and such charges are reasonable and were usual and customary charges for such services;

(b)     Reasonable and necessary medical care and expenses which will in all reasonable probability be incurred in the future;

(c)     Physical pain and suffering in the past;

(d)     Physical pain and suffering in the future;

(e)     Mental anguish in the past;

(f)     Mental anguish in the future;

(g)     Impairment;

(h)     Loss wages; and

(i)     Loss of wage earning capacity, all in the past and in the future.

18.    Plaintiff seeks damages in an amount in excess of this court's minimum jurisdictional limits. Pursuant to Texas Rules of Civil Procedure 47(c)(4) Plaintiff seeks monetary relief over $1,000,000.00.

## V.    JURY DEMAND

19.    Plaintiff respectfully requests a trial by jury for which the appropriate fees have been tendered.

## VI.    PRAYER

20.    WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that Defendants be cited to appear and answer herein, and that upon final hearing of the cause, judgment be entered for the Plaintiff against Defendants jointly and severally, for damages in an amount in excess of the minimum jurisdictional limits of the Court, together with pre-judgment interest (from the date of injury through the date of judgment) at the maximum rate allowed by law; post-judgment interest at the legal rate, costs of court; and such other and further relief to which the Plaintiff may be entitled at law or in equity.

Respectfully submitted,

LAW OFFICE OF WILLIAM J. TINNING, P.C.
720 W. Broadway Ave.
Portland, Texas 78374
Telephone:    (361) 643-9200
Facsimile:    (361) 643-9600
**E-service address:** eservice@tinninglaw.com *
*E-service is only accepted at the above-designated
e-service email address.*

By:    _William J. Tinning_
William J. Tinning
Fed ID. 0749
State Bar No. 20060500
**LEAD ATTORNEY FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that, on August 30, 2023, the foregoing was served on counsel for all parties of record to this litigation in accordance with Texas Rules of Civil Procedure.

*Via Email: mgray@foglerbrar.com*
Michelle E. Gray
*Via Email: cmilner@foglerbrar.com*
Deborah C. Milner
2 Houston Center
909 Fannin Street, Suite 1640
Houston, TX 77002

**Via Email: dmerkley@sbsb-eastham.com**
Mr. David L. Merkley
Via Email: sjcjones@sbsb-eastham.com
Sarah C. Jones
SCHOUEST, BAMBAS, SOSHEA, BENMAIR & EASTHAM, PLLC

Via Email: billy@wsbordelon.com
Mr. William S. Bordelon
LAW OFFICES OF WILLIAM S. BORDELON, LLC

*William J. Tinning*
William J. Tinning

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

SANTOS DIAZ; §
            Plaintiff §
VS. §
 §
THIRD COAST EMPLOYEE SERVICES, §
LLC; (Previous named THIRD COAST §
MIDSTREAM, LLC); §
 §
DAVID COOPER INDIVIDUALLY §
AND AS AGENT, REPRESENTATIVE, §
SERVANT, EMPLOYEE AND/OR §
OFFICER OF THIRD COAST §
EMPLOYEE SERVICES, LLC; §
 §
OCCIDENTAL PETROLEUM §
CORPORATION; §
 §
AND, §
 §
GULF ISLAND WORKS, LLC, §
            Defendants §



Civil Action No. 4:22-cv-04379

---

### AFFIDAVIT OF SANTOS DIAZ

---

      Before me, the undersigned notary, on this day personally appeared Santos Diaz, a person whose identity is known to me. Upon his oath he stated:

      "My name is Santos Diaz. I am over the age of 18 years old, of sound mind, and capable of making this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

      "On the day of the accident, June 24, 2022, David Cooper is the man who said the line was cleared of gas, said it was okay to open it to replace flange/gasket. I opened it and got blown back by explosive release of gas. I hit my head multiple times on the rig, swinging from my harness. and had to be air lifted to University Medical Center-New Orleans. I have received billing of approximately $110,000.00 in medical. David Cooper was branded with a Third Coast Employee Services, LLC logo on his clothing/hard hat. After the accident David Cooper said he thought he had shut off both flares on the boom then said he was sorry. I am still having anxiety, nightmares and memory and organizational issues as Dr. Pollock found in his testing of me, as shown on the report attached. Also, while at work I cannot work to my full potential after hearing pressure releases."

"Further affiant sayeth not."



Santos Diaz

Sworn to and subscribed before me by Santos Diaz on this ___28th___ day of February, 2023.

[seal]

Notary Public in and for the State of Texas

THERESA ZEPEDA
My Notary ID # 6262885
Expires October 21, 2023

12/21/2022 WED 14:39   FAX                                                    ☒003/016

# Project ReEntry

### Brain Health & Rehabilitation Programs
**www.ProjectReEntry.com**



PLAINTIFF'S EXHIBIT "2"

## NEUROPSYCHOLOGICAL EVALUATION

NAME:                    Santos Matthew Diaz

DOB:                     01/21/00

AGE/ETHNICITY/SEX:       22/Hispanic/Male                 **CONFIDENTIAL**

DATE OF EVALUATION:      12/13/22

SOURCES OF INFORMATION:

Review of Records
- Neuropsychological Evaluation (Gabriel Jasso, PsyD, 08/05/22)
- Back to Work Evaluation (Thomas M. Maloney, MD, 08/16/22)
- All Industrial Medical Services (06/25/22)
- LCMC Health – University Medical Center NOLA (06/24/22)
- Acadian Ambulance Service (06/24/22)

Clinical Interview
Neuropsychological Test Battery:
    See Appendix for Details

### BACKGROUND
*This section is a brief summary of the relevant background information that was available when this report was written. It was obtained from available records including medical records, forms and questionnaires completed by the patient and/or the patient's family, and from interviews of the patient and/or the patient's family. The intent is to provide the context in which the objective test results should be interpreted. Every effort was made to ensure the accuracy of this information but there may be factual errors due to the sources of information which were available. Once this report is released, it is a permanent record and may not be altered. If corrections are needed, an addendum may be issued.*

Santos Matthew Diaz is a 22-year-old, Hispanic man who was referred for a neuropsychological evaluation in order to diagnose his current mental, cognitive and emotional condition. The information contained in this report is intended to be used to develop appropriate plans for treatment and rehabilitation.

Larry Pollock, Ph.D. & Associates ● 1800 St. James Place, Suite 100 ● Houston, Texas 77056
Phone: (713) 797-6773 ● Fax: (713) 797-6210

DIAZ, Matt 500089

12/21/2022 WED 14:40  FAX                                                      ☑005/016

Name: Santos Matthew Diaz                                                      3
Report Reference No.: D48605N
Date of Evaluation: 12/13/22

motor functioning (Gabriel Jasso, PsyD, 08/05/22). Although Mr. Diaz has
returned to work, his role with the company has changed, and he feels that he is not
functioning at the same level as he did before.

Mr. Diaz was born and raised in California, as one of three children born to his
parents. His parents divorced when he was three years old, but he described his
early family life as "good" and reported having positive and meaningful
relationship with his siblings and cousins. He has never been married and he does
not have any children. He currently lives with his father in Portland, TX.

Mr. Diaz completed his high school education in California in 2018. He reported
that he was an average student and that he did not receive special education
services. He graduated on time and decided to join the workforce afterwards.

Mr. Diaz is currently employed as a portable welding technician with the same
company he was working with at the time of his accident. He is now a lead for
building containments on the rig; he is no longer working directly with the valve
systems. He has worked in the oil and gas industry since moving to Texas in
2018/2019.

Mr. Diaz's medical and psychological history prior to this accident was
unremarkable. At present, however, he suffers from headaches, disrupted sleep,
and pain throughout his body. He is not currently taking any medication. He has no
history of psychiatric treatment, either. He consumes alcohol socially, but
otherwise does not drink in excess or use illegal drugs. He has no history of arrests.

BEHAVIOR OBSERVATIONS
*The purpose of this section is to describe the patient's general appearance and behavior during the
evaluation. The intent is to communicate the circumstances under which our data was collected and the
factors that may have affected the patient's overall performance. The observations reported in this
section refer to the patient's general behavior and do not refer to the results of specific psychological and
neuropsychological tests.*

Mr. Diaz arrived on time for his appointment and was unaccompanied. He was
dressed casually in sweatpants, sneakers, a t-shirt, and cap. No hygiene or
grooming problems were noted; he appeared well kempt. He stood approximately
5'8" tall and weighed approximately 165 pounds. During the evaluation, there
were no apparent defects in vision or hearing, but he did report experiencing blurry
vision at times. He said that the blurriness began after the accident. His visual
impairment did not appear to significantly impact his testing performance. He had

DIAZ, Matt 500090

Name: Santos Matthew Diaz                                                    4
Report Reference No.: D48605N
Date of Evaluation: 12/13/22

no apparent motor impairments, but he did report that his grip strength has
decreased since the accident. He was right-handed and manual dexterity was
adequate for testing. He ambulated independently and had a normal gait.

Expressive and receptive language were adequate for testing, and articulation was
normal. He was reserved during the beginning of the day, but he gradually became
more talkative as the day progressed. He denied hallucinations and suicidal
ideation.

## TEST RESULTS
*In the results section, the following phrases describe performance within the range of percentiles
indicated in the parentheses: Severe Deficit (Below 1); Moderate Deficit (1-4); Mild Deficit (5-15); Low
Average (16-24); Average (25-76); High Average (77-85); Superior (86-98); Very Superior (99 or
higher)*

## INTELLECTUAL

Performance on the WAIS-IV was in the Low Average range. Mr. Diaz obtained a
Full Scale I.Q. score of 85, which appears to be an accurate estimate of his current
intellectual functioning. Specific test scores are presented in Appendix A. The
following interpretations of Mr. Diaz's intellectual performance are based on the
scaled scores for his age group.

Verbal Comprehension was in the Low Average range (Verbal Comprehension
Index = 85). Abstract verbal reasoning and expressive vocabulary was low
average, retention of general information was mildly deficient.

Perceptual Reasoning was in the Average range (Perceptual Reasoning Index =
90). Abstract visual-spatial analysis was high average, abstract visual reasoning
was mildly deficient, and analysis and synthesis of abstract visual stimuli was low
average.

Working Memory was in the Low Average range (Working Memory Index = 89).
Immediate auditory memory and numerical reasoning were low average.

Processing Speed was in the Low Average range (Processing Speed Index = 89).
Visual discrimination and visual motor speed were low average.

DIAZ, Matt 500091

Name: Santos Matthew Diaz                                                    2
Report Reference No.: D48605N
Date of Evaluation: 12/13/22

On 06/24/22, Mr. Diaz was working on an offshore oil rig when a pipe exploded, causing him to sustain a traumatic brain injury. He was standing on scaffolding while he and a co-worker worked to remove the gasket between two flanges along a section of piping. As he separated the apparatus, he heard wind coming out of the pipe, which concerned him because it potentially indicated that there was a buildup of pressure in the valve system. The next thing he recalled was suddenly being launched several feet backwards, into a metal guardrail, by a strong force. He later learned that the pipe had exploded. During the explosion, he suffered bruises, burns, and lacerations to his face, arms, and torso from the burning shrapnel and gas. He stated that he was "peppered with debris and shrapnel" and that the fire-retardant jacket he was wearing at the time of the explosion "did not prevent a lot of the damage" he suffered. After being knocked into the guardrail, he said he was dazed and out of sorts, and that it took him a few minutes to gather himself. Once he was more alert, he stood up and climbed down a ladder with the help of a co-worker.

Shortly after the incident, Mr. Diaz was seen by a medic on the oil rig and received assistance in removing metal from his body. Apparently, the explosion and shrapnel had impaled him with such great force that it burrowed fragments of metal into his skin. After a few hours, he was evacuated from the rig via helicopter and taken to the University Medical Center-New Orleans (Acadian Ambulance Service, 06/24/22). He reported that he waited several hours in the emergency room lobby before contacting his company and informing them of the wait. He left that hospital (LCMC Health Note, 06/24/22) and was reportedly picked up by a company representative who then took him to another hospital, where he ultimately received acute treatment for his physical injuries (i.e., OTC antibiotic ointment for abrasions, ice packs for soreness, ibuprofen as needed) and was discharged the same day (All Industrial Medical Services, 06/25/22). A few days later, once he was back home in Portland, he saw another medical doctor and was informed he had suffered a concussion. He did not return to work for about two months following the explosion.

Since his accident, Mr. Diaz has suffered from physical, cognitive, and emotional pain. His physical problems have been documented, and in addition to those concerns he has suffered from memory problems, slower speed of information processing, frequent headaches, disrupted sleep, and increased stress and anxiety. He has participated in physical therapy and clinical evaluations, and the results from a recent neuropsychological evaluation indicated deficits in attention and concentration, verbal reasoning, visual and verbal memory, processing speed, and

Name: Santos Matthew Diaz                                                          5
Report Reference No.: D48605N
Date of Evaluation: 12/13/22

## EFFORT AND PERFORMANCE VALIDITY

Mr. Diaz was alert during the evaluation. He was oriented to person, place, and
time. He had a pleasant affect and laughed and smiled often. During the
evaluation, he was cooperative. Rapport was easily established and maintained.

Mr. Diaz's comprehension of test instructions was good. His responses to most
test items were given carefully. He put forth good effort and seemed motivated to
do his best on each task. He persisted on difficult items and was not easily
frustrated. The results of the TOMM (Trial 1 = 47, Trial 2 = 49, Retention Trial =
49), the Dot Counting Test (11, where <19 is considered adequate), the Rey 15-
Item Test (10, where 9 is considered adequate), and Reliable Digit Span (10, where
7 is considered adequate) are indicative of good effort. Attention and
concentration were adequate for testing, and he was not very distractible. The
results of the present evaluation are considered to be a valid assessment of his
current functioning.

## COMPLEX ATTENTION AND PROCESSING SPEED

Assessment of Complex Attention and Processing Speed revealed impairments.
Speed of visual tracking (Trails A) was mildly deficient. His Working Memory
Index from the WAIS-IV was 89, which is in the Low Average range. Immediate
auditory memory (Digit Span) and numerical reasoning (Arithmetic) were low
average. His Processing Speed Index from the WAIS-IV was also 89, which is in
the Low Average range. His speed of visual discrimination (Symbol Search) and
visual motor speed (Coding) were low average. Speed of auditory information
processing on a task involving the serial addition of single digit numbers (PASAT)
was low average as was able to perform the necessary mental processes
adequately.

## EXECUTIVE FUNCTIONING

Psychometric assessment of executive functioning revealed mild impairments.
Controlled oral word fluency (COWA) was average. Speed of visual tracking with
a cognitive flexibility component (Trails B) was mildly deficient. Abstract verbal
reasoning (Similarities) was low average. Visual deductive reasoning (Booklet
Category Test) was low average. On a task involving the generation of

DIAZ, Matt 500093

Name: Santos Matthew Diaz                                                                                6
Report Reference No.: D48605N
Date of Evaluation: 12/13/22

hypotheses, cognitive flexibility and the use of verbal feedback, Mr. Diaz
demonstrated adequate problem solving skills in an unstructured situation.

## LEARNING AND MEMORY

Assessment of learning and memory revealed significant impairments. Rote verbal
learning of a list of 12 unrelated words was mildly deficient for long-term storage
(LTS) and long-term retrieval (LTR), and it was severely deficient for continuous
long-term retrieval (CLTR). After a 30-minute delay, recall of the 12 words was
also severely deficient, as he could only recall 8 of the 12 words. Logical verbal
memory involving the recall of short prose passages was moderately deficient for
immediate recall and worsened to severely deficient after a 30-minute delay.

Visual construction memory was impaired. Mr. Diaz's copy of a complex
geometric figure (Rey Complex Figure) was within normal limits. Reproduction
of the same figure from memory, however, was moderately deficient after a 3-
minute delay and mildly deficient after a 30-minute delay. Visual recognition
memory (CVMT) was mildly deficient. He had difficulty identifying which
pictures he had already seen.

## LANGUAGE

Expressive and receptive language were normal. Visual naming, sentence
repetition and oral spelling were average. The comprehension of simple
instructions involving the discrimination of size, shape, and color and the meaning
of prepositions was also average.

Overall academic functioning ranged from the 4th to beyond the 12th grade level.
Detailed test scores can be found in Appendix A.

Word Reading was at the 12th grade level and was average for his age. Mr. Diaz
was able to read one syllable words as well as many multi-syllable words.

Sentence Comprehension was beyond the 12th grade level, which is in the average
range for his age. He was able to complete complex sentences correctly.

Written spelling was at the 10th grade level and was average. He could spell one
syllable words and some multi-syllable words.

Name: Santos Matthew Diaz                                                7
Report Reference No.: D48605N
Date of Evaluation: 12/13/22

Math Computation was at the 4th grade level, which is in the mildly deficient range
for his age. Mr. Diaz was able to perform simple addition, subtraction,
multiplication, and division, but could not use fractions, percentages, and decimal
numbers correctly.

## PERCEPTUAL AND MOTOR

Visual-spatial functioning was grossly intact. Visual acuity was 20/40 when both
eyes were used together. Mr. Diaz did not wear glasses to correct his vision.
Visual fields were full to confrontation using a simple screening procedure. No
field defects were identified. There was no evidence of visual suppression when
simultaneous, bilateral visual stimulation was presented. Visual form
discrimination was within normal limits; however, he made two peripheral errors
and one distortion error.

Hearing appeared to be within normal limits as he was able to hear subtle sounds in
both ears. Phoneme discrimination was within normal limits as he was able to
distinguish between similar speech sounds.

Tactile functioning was grossly intact. There was no evidence of tactile
suppression when both hands received simultaneous stimulation. Finger
localization was within normal limits, bilaterally.

Mr. Diaz was right hand dominant. Motor functioning was impaired. Fine motor
speed was average on the right and mildly deficient on the left, as measured by
finger-tapping speed. Grip strength was bilaterally mildly deficient, as measured
by a dynamometer. Fine motor coordination on a grooved pegboard was average
bilaterally.

## PERSONALITY AND MENTAL HEALTH
*The impressions contained in this section are based on an integration of information from the
clinical interview, medical records, behavior observations, and performance on objective tests.*

Personality assessment indicated that Mr. Diaz has been suffering emotional
distress because of the accident he was involved in at work, on 06.24.22. Since that
explosion and his ensuing injuries, including a traumatic brain injury, Mr. Diaz has
felt like a shell of his former self. He has trouble processing information quickly,
and he can no longer multitask as efficiently as he did before. Likewise, his
memory is also worse than it was prior to the accident, as he often forgets details

DIAZ, Matt 500095

12/21/2022 WED 14:42  FAX                                                      ☑010/016

Name: Santos Matthew Diaz                                                        8
Report Reference No.: D48605N
Date of Evaluation: 12/13/22

from conversations and recent events. These experiences represent marked changes
to his life, and they contribute to his distress and feelings of self-worth; he does not
feel as capable or confident in himself as he once did. Prior to his accident, he
considered himself a car enthusiast, and attending to his personal collection of
automobiles was an exciting activity for him. Now, because of his injuries and
their physical and emotional ramifications, he no longer invests as much time in
his car hobby as he did before. These experiences represent some of the diffuse life
changes Mr. Diaz has experienced since suffering his injuries, the totality of which
sometimes causes him anxiety, sadness, and worry about the future. Although Mr.
Diaz spoke optimistically about his future and path to recovery, he is currently
experiencing significant symptoms of anxiety and posttraumatic stress, including
fears of not making a successful recovery, uncertainty about the future, spells of
panic (particularly when inside a moving vehicle), sensitivity to reminders of the
trauma, nightmares in which he relives the accident, and trouble experiencing
positive interactions with others.

## DIAGNOSIS

Based on the present evaluation and the criteria in DSM-5, Mr. Diaz has the
following diagnoses:

F02.80      Major Neurocognitive Disorder due to a Traumatic Brain Injury
            (Workplace explosion, 06/24/22)

F43.10      Posttraumatic Stress Disorder (Workplace explosion, 06/24/22)

*Reported Medical Conditions Related to Workplace explosion on 06/24/22:*

- Traumatic Brain Injury
- Posttraumatic headaches
- Sensitivity to light
- Fatigue

DIAZ, Matt 500096

Name: Santos Matthew Diaz                                                  9
Report Reference No.: D48605N
Date of Evaluation: 12/13/22

*Other Reported Medical Conditions:*

- None

## SUMMARY AND CONCLUSIONS

Santos Matthew Diaz is a 22-year-old, Hispanic man who was referred for a neuropsychological evaluation in order to diagnose his current mental, cognitive and emotional condition. The information contained in this report is intended to be used to develop appropriate plans for treatment and rehabilitation.

On 06/24/22, Mr. Diaz was working on an offshore oil rig when a pipe exploded, causing him to sustain a traumatic brain injury. He was launched several feet backwards from where he was standing, into a metal guardrail. He was dazed after the impact. During the explosion, he also suffered bruises, burns, and lacerations to his face, arms, and torso from the burning shrapnel and gas.

Since his accident, Mr. Diaz has suffered from physical, cognitive, and emotional pain. His physical problems have been documented, and in addition to those concerns he has suffered from memory problems, slower speed of information processing, frequent headaches, disrupted sleep, and increased stress and anxiety. He has participated in physical therapy and clinical evaluations, and the results from a recent neuropsychological evaluation indicated deficits in attention and concentration, verbal reasoning, visual and verbal memory, processing speed, and motor functioning (Gabriel Jasso, PsyD, 08/05/22).

Mr. Diaz was born and raised in California, as one of three children born to his parents. His parents divorced when he was three years old, but he described his early family life as "good" and reported having positive and meaningful relationship with his siblings and cousins. He completed his high school education in California in 2018. He reported that he was an average student and that he did not receive special education services. He graduated on time and decided to join the workforce afterwards. He is currently employed as a portable welding technician with the same company he was working with at the time of his accident. He is now a lead for building containments on the rig; he is no longer working directly with the valve systems. He has worked in the oil and gas industry since

DIAZ, Matt 500097

12/21/2022 WED 14:43 FAX                                               ☑012/016

Name: Santos Matthew Diaz                                              10
Report Reference No.: D48605N
Date of Evaluation: 12/13/22

moving to Texas in 2018/2019. He has never been married and he does not have
any children. He currently lives with his father in Portland, TX.

Intellectual functioning on the WAIS-IV was in the Low Average range. Verbal
Comprehension, Working Memory, and Processing Speed were Low Average,
Perceptual Reasoning was Average. His academic skills in reading and spelling
were average at the high school level, but math computation was mildly deficient
at the elementary school level.

The current evaluation revealed significant neuropsychological impairments.
Deficits were found in complex attention and processing speed (speed of visual
tracking), learning and memory (rote verbal learning and memory, logical verbal
memory, visual construction memory, and visual recognition memory), and motor
functioning (grip strength and fine motor coordination).

Mr. Diaz's deficits in complex attention and processing speed make it difficult for
him to search written materials quickly and accurately. He has a slowed speed of
information processing which makes it hard for him to process verbal and visual
information efficiently and to shift between different sets of information. His
deficits in learning and memory make it difficult for him to recall the specifics of
information that he has heard whether the information is related or not. His
deficits in visual memory make it difficult for him to recall nuances in maps,
pictures, or designs. His visual impairments result in frequent blurred vision. His
deficits in motor functioning make it difficult for him to grip tightly with his hands
and manipulate his hands or use small hand tools.

Mr. Diaz has suffered physical injuries, pain, cognitive dysfunction, and emotional
distress as a result of the workplace explosion on 06/24/22. Since then, he has had
more frequent headaches, forgetfulness and increased stress and anxiety. He
would benefit from cognitive rehabilitation to remediate his cognitive dysfunction
and to learn compensatory strategies to cope with it. He would also benefit from
psychotherapy to help him cope more effectively with his anxiety and
posttraumatic stress disorder.

*Larry Pollock, Ph.D.*
Clinical Neuropsychologist
*Electronically signed by*
*Larry Pollock, Ph.D. on*
*12/15/2022 at 2:30 PM*

Roberto A. España, PhD. Candidate.
Examiner

Name: Santos Matthew Diaz                                                  11
Report Reference No.:  D48605N
Date of Evaluation: 12/13/22

*Dr. Pollock's opinions which are expressed in this report are based on a careful review and analysis of the objective test results, personal information forms, historical records, and the clinical interview, and behavior observations.  Please note that there may be additional information currently unknown to him that could affect his conclusions and opinions.  He reserves the right to amend his opinions if additional information becomes available.*

DIAZ, Matt 500099

@014/016

Name: Santos Matthew Diaz                                                          12
Report Reference No.: D48605N
Date of Evaluation: 12/13/22

## APPENDIX A

INTELLECTUAL SCORES: Wechsler Adult Intelligence Scale-Fourth Edition (WAIS-IV)

| Verbal Comprehension | Age Scaled | Perceptual Reasoning | Age Scaled |
|---|---|---|---|
| Similarities | 8 | Block Design | 12 |
| Vocabulary | 8 | Matrix Reasoning | 6 |
| Information | 6 | Visual Puzzles | 7 |

| Working Memory | Age Scaled | Processing Speed | Age Scaled |
|---|---|---|---|
| Digit Span | 8 | Symbol Search | 8 |
| Arithmetic | 8 | Coding | 8 |

| | |
|---|---|
| Verbal Comprehension Index | 85 |
| Perceptual Reasoning Index | 90 |
| Working Memory Index | 89 |
| Processing Speed Index | 89 |
| Full Scale IQ | 85 |

ACADEMIC SCORES: Wide Range Achievement Test-Fourth Edition (WRAT4)

| | Grade | Standard Score | Percentile |
|---|---|---|---|
| Word Reading | 12.5 | 101 | 53 |
| Sentence Comprehension | > 12.9 | 106 | 66 |
| Spelling | 10.3 | 92 | 30 |
| Math Computation | 4.8 | 77 | 6 |

Name: Santos Matthew Diaz                                                        13
Report Reference No.: D48605N
Date of Evaluation: 12/13/22

## APPENDIX B
## NEUROPSYCHOLOGICAL TEST BATTERY

1. Intellectual Assessment
   Wechsler Adult Intelligence Scale Fourth Edition (WAIS-IV)

2. Effort and Performance Validity
   Reliable Digit Span
   Test of Memory Malingering (TOMM)
   Rey 15 Item Test
   Dot Counting Test

3. Complex Attention and Processing Speed
   Trails A
   WAIS-IV – Working Memory Index - Digit Span, Arithmetic
   WAIS-IV – Processing Speed Index - Symbol Search, Coding
   Paced Auditory Serial Addition Test (PASAT)

4. Executive Functioning
   Controlled Oral Word Association [CFL]
   Trails B
   WAIS-IV - Similarities
   Booklet Category Test – 2nd Edition

5. Learning and Memory
   Verbal Selective Reminding Test (Buschke)
   Logical Verbal Memory (Subtest of the WMS-IV)
   Rey Complex Figure Test
   Continuous Visual Memory Test (Trahan and Larrabee)

6. Language
   Multilingual Aphasia Examination (MAE), 3rd Edition
   Wide Range Achievement Test-Fourth Edition (WRAT4)

7. Perceptual and Motor
   Sensory/Perceptual Examination (Visual, Auditory & Tactile)
   Visual Form Discrimination Test (Benton)
   Grip Strength Using Dynamometer
   Finger Oscillation (Finger Tapper)
   Grooved Pegboard

8. Personality and Mental Health
   Minnesota Multiphasic Personality Inventory-2
   Beck Depression Inventory - II (BDI-II)
   Beck Anxiety Inventory (BAI)
   Posttraumatic Stress Diagnostic Scale
   Rivermead Post-Concussion Symptoms Questionnaire

DIAZ, Matt 500101

Name: Santos Matthew Diaz                                                    14
Report Reference No.: D48605N
Date of Evaluation: 12/13/22

## APPENDIX C

### DIAGNOSIS

Based on the present evaluation and the criteria in DSM-5, Mr. Diaz has the
following diagnoses:

| | |
|---|---|
| F02.80 | Major Neurocognitive Disorder due to a Traumatic Brain Injury (Workplace explosion, 06/24/22) |
| F43.10 | Posttraumatic Stress Disorder (Workplace explosion, 06/24/22) |

*Reported Medical Conditions Related to* Workplace explosion on 06/24/22:

- Traumatic Brain Injury
- Posttraumatic headaches
- Sensitivity to light
- Fatigue

*Other Reported Medical Conditions:*

- None

# Project ReEntry

Brain Health & Rehabilitation Programs
**www.ProjectReEntry.com**

PLAINTIFF'S EXHIBIT "3"

## REPORT OF THE

## BRAIN INJURY FUNCTIONAL EVALUATION

## PROGRAM at PROJECT RE-ENTRY

NAME:                              Santos Matthew Diaz

AGE/RACE/SEX:              22/Hispanic/Male

DATE OF EVALUATION:      12/14/22

ASSESSMENT PROCEDURES: See Attachment.



## BACKGROUND INFORMATION

Mr. Diaz was referred to Project ReEntry's Brain Injury Functional Evaluation Program (BIFE) to assess the impact that his cognitive deficits have on his every day functional performance. These results will also be used to determine the amount and type of treatment that the patient needs in order to improve his functioning in the real world.

Mr. Diaz sustained a concussion when a pipe exploded in a workplace accident on June 24, 2022. A detailed summary of his background can be found in his Neuropsychological Evaluation with our practice dated 12/13/22.

Larry Pollock, Ph.D. & Associates ● 1800 St. James Place, Suite 100 ● Houston, Texas 77056
Phone: (713) 797-6773 ● Fax: (713) 797-6210

DIAZ, Matt 500105

Name: Santos Matthew Diaz                                    2
Report Reference No.: 12/14/22
Date of Evaluation: 12/13/22


## BEHAVIOR:

Mr. Diaz drove himself to the evaluation and arrived on time for his appointment. He was dressed in warm-up pants, a t-shirt, a baseball cap, and sneakers. His grooming and hygiene were good. He ambulated independently and had a normal gait. He had an impulsive response style and began working on several tasks before the instructions were given to him. He responded well to feedback from the evaluator to slow down and read the task instructions carefully. He said that since the accident, he has a hard time concentrating. He also said that he has lost feeling in his forehead. Rapport was easily established and maintained.

Mr. Diaz's performance on the CNS Vital Signs produced valid scores in all 16 domains.

The results of the current evaluation are considered to be a valid assessment of Mr. Diaz's current functioning.

## CNS VITAL SIGNS (CNS VS) ASSESSMENT:

Mr. Diaz participated in a computerized assessment of cognitive functioning. The CNS VS is a brief, computerized assessment of basic neurocognitive functions. It is not intended to replace a comprehensive neuropsychological evaluation. As a computerized technique, it does not necessarily yield a one-to-one correspondence with traditional neuropsychological tests. However, it is a useful method to cross-validate the results of traditional tests and often assists in identifying bona fide cognitive strengths and weaknesses. The current administration of the CNS VS revealed average or higher functioning in the Neurocognition Index, Processing Speed, Reasoning, Executive Function, Psychomotor Speed, Reaction Time, Complex Attention, Cognitive Flexibility, Social Acuity, Working Memory, Sustained Attention, Simple Attention, and Motor Speed. Deficits were found in

12/22/2022 THU 15:14  FAX                                                ☒005/016

Name: Santos Matthew Diaz                                                          3
Report Reference No.: 12/14/22
Date of Evaluation: 12/13/22

Composite Memory, Verbal Memory, and Visual Memory. A summary
of the CNS VS results is attached to this report.

## BARKLEY DEFICITS IN EXECUTIVE FUNCTIONING SCALE (BDEFS)

The Barkley Deficits in Executive Functioning Scale was designed as a
self-report technique for evaluating the dimensions of adult executive
functioning in daily life. The BDEFS offers a snapshot of the capacities
involved in time management, organization/problem solving, self-
restraint, self-motivation, and self-regulation of emotions. It also
includes a Total EF (Executive Functioning Score). The scoring ranges
are Mildly Deficient (84-95%ile), Moderately Deficient (96-99%ile),
and Severely Deficient (>99%ile).

Mr. Diaz was normal in Time Management (26-50%ile), mildly
deficient in Organization/Problem Solving (92%ile), normal in Self-
Restraint (26-50%ile), normal in Self-Motivation (51-75%ile), normal in
Self-Regulation of Emotions (51-75%ile), and normal in the Total
Executive Functioning score (51-75%ile).

Based on the results of the BDEFS, Mr. Diaz reports that he has serious
problems in his executive functioning in real world practical activities.
He has very poor time management skills, has difficulty with
organizational skills and with problem-solving. He also has difficulty
controlling his emotions and generating the internal (self) motivation
required to initiate and control his behavior. Given his problems in
executive functioning, he is unlikely to maintain competitive
employment or to complete goal directed behavior. These impairments
in higher cortical functions interfere with his ability to function in a
responsible and independent manner.

Name: Santos Matthew Diaz                                              4
Report Reference No.: 12/14/22
Date of Evaluation: 12/13/22


## FUNCTIONAL COGNITIVE ACTIVITIES:

Mr. Diaz was administered several functional cognitive activities that
simulate real world tasks. The following activities were administered:

> **Dueling Cards**
> **Bolt Board**
> **One Step At A Time**
> **Bill's Bills**
> **Pipes Build-A-Table**
> **Hand Tools Dexterity Test**

**Dueling Cards** evaluates multitasking abilities and cognitive flexibility.
The client is given three sets of index cards: Name Cards to alphabetize,
Date Cards to put in chronological order, and Account Cards to arrange in
numerical order. The client is given a specific set of instructions on how to
sequence each set of index cards. The client is also given a timer and
instructed to set it for 5 minutes before starting each set of index cards.
When the timer sounds, the client must leave that set of index cards in
process and move on to the next set of index cards. The client repeats the
process until all three sets of index cards are completed. Ms. Diaz made 0
errors on the "account number" cards, 4 errors on the "name" cards, and 8
errors on the "date" cards. However, the "date" cards were arranged by
month and day only. The other two decks were in reverse order. This
performance was severely impaired.

The **Bolt Board** is a verbal memory task that involves putting different
shaped nuts and different colored washers onto bolts that are color coded
on a wooden board. The client is given 6 sequential, oral directions about
how to complete the task. The client has to remember all of the directions
in order to complete the task correctly. Mr. Diaz remembered 4 out of the
6 directions, which is impaired.

DIAZ, Matt 500108

12/22/2022 THU 15:15 FAX                                                    ☑007/016

Name: Santos Matthew Diaz                                                        5
Report Reference No.: 12/14/22
Date of Evaluation: 12/13/22

**One Step At A Time** requires following instructions, attention to visual details, cognitive flexibility, and frustration control. The client has to start with the phrase "Grandfather Clock" and make changes to consonants and vowels as directed, in order to end up with a new phrase when the task is complete. Mr. Diaz was able to complete the task correctly on his second attempt, which is a mildly impaired performance.

**Bill's Bills** is a task that involves paying monthly bills and keeping track of monthly income and expenditures. It involves following directions, problem solving, reading comprehension, and basic math skills. Mr. Diaz's performance was impaired on this task, as he made 6 errors out of the 17 required responses.

**Pipes Build-A-Table** is a task in which the client uses various lengths of PVC pipes and joints to build a table based on a diagram. This task requires good eye/hand coordination and good visual-spatial analysis. Mr. Diaz was able to build the table quickly and accurately.

**The Hand Tool Dexterity Test** is an assessment in which the client disassembles 12 bolts from a wooden frame in a specific order, and then reassembles them on the other side of the frame using wrenches and screwdrivers. It evaluates dexterity with common hand tools and nuts, bolts, and washers. Mr. Diaz completed the task in 5 minutes and 48 seconds, which is at the 95th percentile, and is a normal/impaired performance.

## CONCLUSIONS:

Based on his performance on his recent Neuropsychological Evaluation and on his performance on this Brain Injury Functional Evaluation, Mr. Diaz's cognitive dysfunction impairs his ability to function effectively in the real world.

Name: Santos Matthew Diaz                                                          6
Report Reference No.: 12/14/22
Date of Evaluation: 12/13/22

Mr. Diaz had difficulty with concentration and memory. His memory was
poor for verbal information which is involved in real world, functional
activities. Although he was trying to work fast, his actual speed of
processing information was impaired.

Due to the cognitive deficits identified in his Neuropsychological
Evaluation and to the functional problems observed in this evaluation, Mr.
Diaz has significant difficulty learning and retaining new information.
Additionally, he has problems using previously learned information due to
his difficulty retrieving information from memory. His executive
dysfunction impairs his problem solving, his reasoning, his speed of
processing information, and his impulse control on a daily basis.

Mr. Diaz needs cognitive rehabilitation to remediate his cognitive
dysfunction and learn compensatory strategies to cope with it.

**Proposed Cognitive Rehabilitation Program**

It is recommended that Mr. Diaz receive 6 months of comprehensive
cognitive rehabilitation which will enable him to function more effectively
in the real world. With practice and repetition, Mr. Diaz will learn to use
appropriate compensatory strategies automatically. With the consistent use
of these strategies, he will maximize his cognitive functioning.

Mr. Diaz's treatment plan should include the following compensatory
strategies which illustrate the type of strategies that he should use to
overcome his neurocognitive deficits.

**VERBAL MEMORY** – The ability to remember things that are
**said to him.**

Develop and consistently use a memory notebook that includes:

Name: Santos Matthew Diaz                                                    7
Report Reference No.: 12/14/22
Date of Evaluation: 12/13/22

    - Calendar
    - Daily Schedule
    - To-do or Errand List
    - Sheet of Factual information including address, phone numbers,
    family names, doctors' names
    - All Work Procedures
    -Always carry a notebook and a pen
    -Immediately write down information after receiving it
    -Refer to notebook at least hourly to stay on track

**MEMORY FOR PROCEDURES** – **The ability to remember how to perform repetitive sequences of behavior that are required to complete a task.**

1. Write down each step of a new task, filling in the details where necessary.
2. Repeat the information back to the person giving it.
3. Ask clarifying questions.
4. Ask for a demonstration of the procedure if necessary.
5. Read notes before starting the task each time.
6. Refer to your notes often while performing the task.
7. If necessary, use a checklist as follows:
    a. complete step #1
    b. review step #1
    c. check off step #1 on your checklist. **Only then**
    d. start step #2
    e. review step #2, etc.

**VISUAL MEMORY** – **remembering information presented visually**

Take notes on what you see.
Organize your home and work so that frequently used items have a

Name: Santos Matthew Diaz                                    8
Report Reference No.: 12/14/22
Date of Evaluation: 12/13/22

designated place.  Location and placement of items thus becomes automatic.   Always return items to their proper place.

- Use maps, drawings, pictures, and written directions to
   learn a new environment or to move from one place to
   another.

- When looking at something you want to remember, describe
   it out loud or subvocalize.  Say what you see.

- Use checklists, if necessary.

- When working with written material use a pencil or index
   card to mark your place on the page as you go.

- When stopping in the middle of a task, take detailed notes on
   exactly where you left off.

A comprehensive cognitive rehabilitation program for Mr. Diaz would also include group modalities to treat his communication problems and other cognitive deficits. He also needs individual psychotherapy to address his emotional coping and adjustment to disability issues.

The cost for 6 months of cognitive rehabilitation for Mr. Diaz (6 hours per day for 5 days per week) is $200 per treatment hour. Treatment would total 30 treatment hours per week for 24 weeks (720 hours) or $144,000. He will also need 50 sessions of individual psychotherapy at a cost of $300 per session to treat his posttraumatic stress disorder.

*Larry Pollock, Ph.D.*
Clinical Neuropsychologist
Electronically Signed by
Larry Pollock, Ph.D.

Name: Santos Matthew Diaz                                    9
Report Reference No.: 12/14/22
Date of Evaluation: 12/13/22

## ASSESSMENT PROCEDURES

### Functional Cognitive Activities

Dueling Cards
Bolt Board
One Step At A Time
Pipes Build-A-Table
Hand Tools Dexterity Test
Bill's Bills

### CNS Vital Signs – A computerized assessment of cognitive functioning

### Barkley Deficits in Executive Functioning Scale (BDEFS)

Name: Santos Matthew Diaz                                                    10
Report Reference No.: 12/14/22
Date of Evaluation: 12/13/22

# APPENDIX A

## Barkley Deficits in Executive Functioning Scale  (BDEFS)

| FUNCTION | SCORE | %TILE | INTERPRETATION |
|----------|-------|-------|----------------|
| Time Management | 33 | 26-50 | Normal |
| Organization/Problem Solving | 51 | 92 | Mild Deficit |
| Self-Restraint | 25 | 26-50 | Normal |
| Self-Motivation | 15 | 51-75 | Normal |
| Self-Regulation of Emotions | 20 | 51-75 | Normal |
| Total Executive Functioning | 144 | 51-75 | Normal |

DIAZ, Matt 500114

☑013/016

## CNS Vital Signs Report — Test Date: December 14, 2022 08:25:14

| Patient ID: SantosMattDiazPRE | Administrator: Russ Shanks, M.A., CBIS |
|---|---|
| Age: 22 | Language: English (United States) |
| Total Test Time: 50:54 (min:secs) | CNSVS Duration 50:46 (min:secs)    Version 4.0.102 |

### Patient Profile

| Domain Scores | Patient Score | Standard Score | Percentile | VI* | Percentile Range / Standard Score Range |||||
|---|---|---|---|---|---|---|---|---|---|
| | | | | | Above >109 | Average 90 – 109 | Low Average 80 – 89 | Low 70 – 79 | Very Low <70 |
| Neurocognition Index (NCI) | | 88 | 23 | Yes | | | X | | |
| Composite Memory | 78 | | 1 | Yes | | | | | |
| Verbal Memory | 38 | | 1 | Yes | | | | | |
| Visual Memory | 40 | | 8 | Yes | | | | X | |
| Psychomotor Speed | 169 | 90 | 25 | Yes | | | | | |
| Reaction Time* | 645 | | 27 | Yes | | | | | |
| Complex Attention* | 3 | 110 | 75 | Yes | | | | | |
| Cognitive Flexibility | 48 | 97 | 42 | Yes | | | | | |
| Processing Speed | 54 | 86 | 18 | Yes | | | | | |
| Executive Function | 48 | 96 | 40 | Yes | | | | | |
| Social Acuity | 9 | 103 | 58 | Yes | | | | | |
| Reasoning | 6 | 95 | 37 | Yes | | | | | |
| Working Memory | 15 | 116 | 86 | Yes | | | | | |
| Sustained Attention | 35 | | 75 | Yes | | | | | |
| Simple Attention | 40 | 108 | 70 | Yes | | | | | |
| Motor Speed | 115 | 97 | 42 | Yes | | | | | |

Domain Dashboard: Above average domain scores indicate a standard score (SS) greater than 109 or a Percentile Rank (PR) greater than 74, indicating a high functioning test subject. Average is a SS 90-109 or PR 25-74, indicating normal function. Low Average is a SS 80-89 or PR 9-24 indicating a slight deficit or impairment. Below Average is a SS 70-79 or PR 2-8, indicating a moderate level of deficit or impairment. Very Low is a SS less than 70 or a PR less than 2, indicating a deficit and impairment. Reaction times are in milliseconds. An * denotes that "lower is better", otherwise higher scores are better. Subject Scores are raw scores calculations generated from data values of the individual subtests.

VI** - Validity Indicator: Denotes a guideline for representing the possibility of an invalid test or domain score. "No" means a clinician should evaluate whether or not the test subject understood the test, put forth their best effort, or has a clinical condition requiring further evaluation.

| Verbal Memory Test (VBM) | Score | Standard | Percentile | |
|---|---|---|---|---|
| Correct Hits - Immediate | 1 | | 1 | Verbal Memory test: Subjects have to remember 15 words and recognize them in a field of 15 distractors. The test is repeated at the end of the battery. The VBM test measures how well a subject can recognize, remember, and retrieve words e.g. explicit or attend literal representations or attribute. "Correct hits" refers to the number of target words recognized. Low scores indicate verbal memory impairment. |
| Correct Passes - Immediate | 15 | | 77 | |
| Correct Hits - Delay | 7 | | 3 | |
| Correct Passes - Delay | 15 | 108 | 73 | |

DIAZ, Matt 500115

12/22/2022 THU 15:19  FAX                                                      ☒014/016

| CNS Vital Signs Report | | Test Date: December 14, 2022 08:26:14 | | |
|---|---|---|---|---|
| Patient ID: SantosMattDiazPRE | | Administrator: Russ Shanks, M:A.,CDIS | | |
| Age: 22 | | Language: English (United States) | | |
| Total Test Time: 50:54 (min:secs) | | CNSVS Duration 50:46 (min:secs) | | Version 4.0.102 |

| Visual Memory Test (VSM) | Score | Standard | Percentile | |
|---|---|---|---|---|
| Correct Hits - Immediate | 11 | | 23 | Visual Memory test: Subjects have to remember 15 geometric figures, and recognize them in a field of 15 distractors. The test is repeated at the end of the battery. The VSM test measures how well a subject can recognize, remember, and retrieve geometric figures e.g. exploit or attend symbolic or spatial representations. "Correct Hits" refers to the number of target figures recognized. Low scores indicate visual memory impairment. |
| Correct Passes - Immediate | 11 | | 32 | |
| Correct Hits - Delay | 11 | | 45 | |
| Correct Passes - Delay | / | | 1 | |

| Finger Tapping Test (FTT) | Score | Standard | Percentile | |
|---|---|---|---|---|
| Right Taps Average | 60 | | 45 | The FTT is a test of motor speed and fine motor control ability. There are three rounds of tapping with each hand. The FTT test measures the speed and the number of finger-taps with each hand. Low scores indicate motor slowing. Speed of manual motor activity varies with handedness. Most people are faster with their preferred hand but not always. |
| Left Taps Average | 55 | | 42 | |

| Symbol Digit Coding (SDC) | Score | Standard | Percentile | |
|---|---|---|---|---|
| Correct Responses | 54 | | 16 | The SDC test measures speed of processing and draw upon several cognitive processes simultaneously, such as visual scanning, visual perception, visual memory, and motor functions. Errors may be due to impulsive responding, misperception, or confusion. |
| Errors* | 0 | | 79 | |

| Stroop Test (ST) | Score | Standard | Percentile | |
|---|---|---|---|---|
| Simple Reaction Time* | 282 | | 40 | The ST measures simple and complex reaction time, inhibition / disinhibition, mental flexibility or directed attention. The ST helps assess how well a subject is able to adapt to rapidly changing and increasingly complex set of directions. Prolonged reaction times indicate cognitive slowing / impairment. Errors may be due to impulsive responding, misperception, or confusion. |
| Complex Reaction Time Correct* | 612 | | 23 | |
| Stroop Reaction Time Correct* | 678 | | 37 | |
| Stroop Commission Errors* | 0 | | 73 | |

| Shifting Attention Test (SAT) | Score | Standard | Percentile | |
|---|---|---|---|---|
| Correct Responses | 51 | | 25 | The SAT measures executive function or how well a subject recognizes set shifting (mental flexibility) and abstraction (rules, categories) and manages multiple tasks simultaneously. Subjects have to adjust their responses to randomly changing rules. The best scores are high correct responses, few errors and a short reaction time. Normal subjects may be slow but accurate, or fast but not so accurate. Attention deficit may be apparent. |
| Errors* | 3 | | 68 | |
| Correct Reaction Time* | 1161 | | 12 | |

DIAZ, Matt 500116

12/22/2022 THU 15:20  FAX                                                    ☑015/016

| CNS Vital Signs Report | Test Date: December 14, 2022 08:26:14 |
|---|---|
| Patient ID: SantosMattDiazPRE | Administrator: Russ Shanks, M.A., CBIS |
| Age: 22 | Language: English (United States) |
| Total Test Time: 50:54 (min:secs) | CNSVS Duration 50:46 (min:secs) | Version 4.0.102 |

| Continuous Performance Test (CPT) | Score | Standard | Percentile | |
|---|---|---|---|---|
| Correct Responses | 40 | | 61 | The CPT measures sustained attention or vigilance and choice reaction time. Most normal subjects obtain near-perfect scores on this test. A long response time may suggest cognitive slowing and/or impairment. More than 2 errors (total) may be clinically significant. More than 4 errors (total) indicate attentional dysfunction. |
| Omission Errors* | 0 | | 61 | |
| Commission Errors* | 0 | | 70 | |
| Choice Reaction Time Correct* | 477 | | 5 | |

| Perception Of Emotions Test (POET) | Score | Standard | Percentile | |
|---|---|---|---|---|
| Correct Responses | 12 | | 82 | The POET measures how well a subject can perceive and identify specific emotions. The POET is an identification test of the positive emotions "happy" and "calm" and the negative emotions "angry" and "sad". "Social cognition" or "emotional acuity" has been defined as "the way in which people make sense of other people and themselves". It is the ability to perceive and understand social information. The reaction times in POET are much longer than in the other tests, indicating the complexity of central processes governing emotional acuity. |
| Average Correct Reaction Time* | 1293 | | 9 | |
| Omission Errors* | 0 | | 82 | |
| Commission Errors* | 3 | | 58 | |
| **Positive Emotions** | | | | |
| Correct Hits | 6 | | 70 | |
| Reaction Time* | 1288 | | 8 | |
| **Negative Emotions** | | | | |
| Correct Hits | 6 | | 77 | |
| Reaction Time* | 1298 | | 18 | |

| Reasoning Test (NVRT) | Score | Standard | Percentile | |
|---|---|---|---|---|
| Correct Responses | 10 | | 34 | The NVRT measures how well a subject can perceive and understand the meaning of visual or abstract information and recognizing relationships between visual-abstract concepts. The NVRT is comprised of 15 matrices, or visual analogies. The matrices are progressively more difficult. Each is presented for 14.5 seconds. Non-verbal or visual-abstract reasoning is the process of perceiving issues and reaching conclusions through the use of symbols or generalizations rather than concrete factual information. |
| Average Correct Reaction Time* | 5115 | | 32 | |
| Commission Errors* | 4 | | 40 | |
| Omission Errors* | 1 | | 37 | |

DIAZ, Matt 500117

12/22/2022 THU 15:21 FAX     ☑016/016

## CNS Vital Signs Report     Test Date: December 14, 202 08:26:14

| | |
|---|---|
| Patient ID: SantosMattDiazPRE | Administrator: Russ Shanks, M.A., CBIS |
| Age: 22 | Language: English (United States) |
| Total Test Time: 50:54 (min:secs) | CNSVS Duration 50:46 (min:secs)    Version 4.0.102 |

### Four Part Continuous Performance Test (FPCPT)

| | Score | Standard | Percentile |
|---|---|---|---|
| **Part 1** | | | |
| Average Correct Reaction Time* | 310 | | 55 |
| **Part 2** | | | |
| Correct Responses | 6 | | 58 |
| Average Correct Reaction Time* | 318 | | 66 |
| Incorrect Responses* | 0 | | 61 |
| Average Incorrect Response Time* | 0 | | |
| Omission Errors* | 0 | | 58 |
| **Part 3** | | | |
| Correct Responses | 14 | | 45 |
| Average Correct Reaction Time* | 662 | | 5 |
| Incorrect Responses* | 0 | | 61 |
| Average Incorrect Response Time* | 0 | | |
| Omission Errors* | 2 | | 45 |
| **Part 4** | | | |
| Correct Responses | 15 | | 81 |
| Average Correct Reaction Time* | 571 | | 61 |
| Incorrect Responses* | 0 | | 79 |
| Average Incorrect Response Time* | 0 | | |
| Omission Errors* | 1 | | 81 |

The FPCPT test is a four part test that measures a subject's working memory and sustained attention. The FPCPT is a four "part test: PART ONE – is a simple reaction time test, the subject must press the space bar when any stimulus is presented; PART TWO – is a variant of the continuous performance test, the subject is asked to respond to one stimulus, but not to any others. Discrimination is required, so the reaction times that are generated are "choice reaction times". PART THREE – is a "one back" CPT. The subject has to respond to a figure only if the figure immediately preceding was the same. PART FOUR – is a "two-back" CPT. It is a difficult task and is used to measure working memory. Parts two, three, and four of the tests are used to calculate sustained attention domain.

DIAZ, Matt 500118